UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JOHN FLYNN *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 09-1855 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 5 |
| | : | | |
| R.D. MASONRY, INC. *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

DENYING THE DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

This matter comes before the court on the motion filed by two of the defendants, R.D. Masonry Inc. ("RDMI") and R.D. Masonry LLC ("RDM LLC"), (collectively, "the RDM defendants") to dismiss the plaintiffs' complaint for lack of personal jurisdiction and for failure to state a claim for which relief can be granted. The plaintiffs in this case seek to recover delinquent contributions under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. Because the court concludes that it has personal jurisdiction over the RDM defendants based on § 502(e) of ERISA, and because the plaintiffs have set forth a plausible entitlement to relief, the court denies the RDM defendants' motion to dismiss.

## II. FACTUAL & PROCEDURAL BACKGROUND

The plaintiffs are trustees of the Bricklayers and Trowel Trades International Pension Fund ("IPF") and the International Masonry Institute ("IMI"), multi-employer benefit plans that

are "administered" in the District of Columbia. Compl. ¶¶ 1-5. The plaintiffs allege that they are authorized to effect collections on behalf of the IPF on IMI. *Id*. ¶ 4. The defendants – RDMI, RDM LLC and Bucher Masonry, LLC ("Bucher") – are Florida companies that allegedly maintain offices and conduct business in the state of Florida and employ members of the International Union of Bricklayers and Allied Craftworkers and its affiliated local unions (collectively, "the Union"). *Id*. ¶¶ 6-9.

The plaintiffs assert that defendants RDMI and Bucher executed collective bargaining agreements with the Union ("the agreements") that obligated these employers to make certain payments to the IPF and IMI on behalf of their covered employees and submit to audits in order to determine the accuracy of such payments. *Id*. ¶¶ 10, 12, Exs. A-E. The agreements each contained an "evergreen clause" which, the plaintiffs purport automatically renewed the contract from one term to the next, binding RDMI and Bucher past the expressed expiration date. Pls.' Opp'n at 4, n.2. Although RDMI and Bucher allegedly submitted a portion of their required contributions, Compl. ¶ 13, the plaintiffs claim that the "[d]efendants have failed to submit required reports and [other] contributions," *id.* ¶ 14. The plaintiffs contend that all three defendants are "alter ego companies"[1] because RDM LLC and RDMI share an identical street address and all three defendants have "common ownership or management, and/or the same or similar employees, customers, and type of work." *Id*. ¶ 11. Accordingly, the plaintiffs seek to hold the defendants "jointly and severally liable for each others['] debts," and more specifically, for their alleged failure "to properly submit required reports and contributions for covered work they have performed," *id*. ¶¶ 11, 14.

---

[1] It is unclear from the pleadings whether the plaintiffs allege that all three companies are alter egos of each other or whether each company is an alter ego of one of the other companies but not necessarily both. *See generally* Compl. Nevertheless, such a distinction is immaterial to this decision.

2

On September 29, 2009, the plaintiffs filed their complaint pursuant to §§ 502(a)(3), 502(g)(2) and 515 of ERISA.[2] *See generally* Compl. The plaintiffs seek an order requiring the defendants to "submit all required reports and to make all contributions due and owing to the IPF and IMI, and to pay the costs and disbursements of this action." *Id.* ¶ 5. More specifically, the plaintiffs ask that RDMI "turn over its books and records from January 2005 through the date that the company ceased operations, or through December 2007, whichever date is later." *Id.* ¶ 2. Similar disclosure is sought from RDM LLC for the period from December 2007 through the present and from Bucher from January 2008 through the present. *Id.*

The RDM defendants have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim. *See generally* RDM Defs.' Mot. With this motion now ripe for adjudication, the court turns to the applicable legal standards and the parties' arguments.

## III. ANALYSIS

### A. The Court Denies the RDM Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

### 1. Legal Standard for a Motion to Dismiss for Lack of Personal Jurisdiction Under Rule 12(b)(2)

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of establishing a prima facie case that personal jurisdiction exists. *See e.g., Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). To establish a prima facie case, the plaintiff must present evidence sufficient to defeat a motion

---

[2] Section 502(a) of ERISA authorizes fiduciaries to commence a civil action; § 502(g)(2) outlines the attorney's fees, costs and awards recoverable in actions concerning delinquent contributions; and § 515 describes an employer's obligations to make contributions to a multiemployer plan. 29 U.S.C. §§ 1132, 1143.

3

for judgment as a matter of law. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990); *cf. Carter v. Duncan-Huggins, Ltd.*, 727 F.2d 1225, 1227 (D.C. Cir. 1984) (indicating, under a differently labeled but similar standard, that such motions should be denied unless "the evidence, together with all inferences that can reasonably be drawn therefrom is so one-sided that reasonable men could not disagree on the verdict").

In determining whether a basis for personal jurisdiction exists, the court resolves factual discrepancies in the complaint and affidavits in favor of the plaintiff. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). The court, however, need not treat all of the plaintiff's allegations as true. *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000); *see also GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000) (stating that courts should not accept bare allegations and conclusory statements). Moreover, the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Arista Records, Inc. v. Sakfield Holding Co.*, 314 F. Supp. 2d 27, 30 (D.D.C. 2004) (internal quotations omitted).[3]

### 2. The Court Has Personal Jurisdiction Over the RDM Defendants

The RDM defendants maintain that the court lacks personal jurisdiction over them because, unlike Bucher, the RDM defendants are neither "parties to a binding agreement governed by ERISA" nor alter egos of Bucher. RDM Defs.' Mot. at 5-7. They argue that "[t]o allow [the] [p]laintiffs' [sic] the ability to haul these two companies into a jurisdiction where they have not actively conducted business and who are not parties to a binding agreement governed by ERISA would render a severe harm," particularly as "there has been no

---

[3] If a defendant's affidavits contradict the plaintiff's prima facie case that personal jurisdiction exists, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier v. Sun Int'l Hotels*, 288 F.3d 1264, 1269 (11th Cir. 2002).

determination that Bucher LLC owes any contributions to the Union." *Id.* at 7. The RDM defendants, however, do not contest and, indeed, implicitly concede that as a general matter, an employee submits itself to the court's jurisdiction by entering into a valid agreement governed by ERISA. *See id.* at 5 (stating that "only Bucher LLC has submitted itself to the jurisdiction of the Court by entering into a valid agreement with the Union").

The plaintiffs respond that regardless of whether the RDM defendants are determined to be alter ego companies, the court has personal jurisdiction over those defendants pursuant § 502(e)(2), ERISA's nationwide service of process provision. Pls.' Opp'n at 2-3. In addition, the plaintiffs maintain that the RDM defendants were signatories to a binding ERISA-governed agreement between the RDM defendants and the Union. *Id.* at 4-5. More specifically, the plaintiffs point out that two of the five agreements at issue were signed by "RD Masonry," which could be either of the RDM defendants.[4] *Id.* at 5. The plaintiffs explain that as a signatory, "RD Masonry" would have been bound to these agreements during the periods of time for which the plaintiffs are seeking relief due to the "evergreen clauses" controlling the expiration of the contract. *Id.* at 4-5; Compl., Exs. A, E. The plaintiffs also note that the RDM defendants do not provide any affidavits in support of their contention that RDM LLC did not sign any collective bargaining agreement. Pls.'s Opp'n at 5. Finally, the plaintiffs argue that under ERISA, RDMI is additionally and independently subject to the personal jurisdiction of the court based upon its previous "payment of fringe benefit contributions" to the IPF and IMI, both of which are "administered in the District of Columbia." *Id.* at 6.

Under Federal Rule of Civil Procedure 4(k)(1)(C), service of a summons establishes personal jurisdiction over a defendant when such service is authorized by a federal statute. FED.

---

[4] The plaintiffs' complaint, on the other hand, alleges that only RDMI executed a collective bargaining agreement with the Union, making no mention of RDM LLC. Compl. ¶ 10.

R. CIV. P. 4(K)(1)(C). Section 502(e)(2) of ERISA authorizes nationwide service of process on defendants in an ERISA action. 29 U.S.C. § 1132(e)(2) (providing that "[w]here an action under [ERISA] is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found"). Thus, the court has personal jurisdiction over the RDM defendants irrespective of whether those defendants have conducted business in the District of Columbia, *see Flynn v. Ohio Bldg. Restoration, Inc.,* 260 F. Supp. 2d 156, 170 (D.D.C. 2003) (concluding that an alleged lack of contacts with the District of Columbia did not preclude the court from asserting personal jurisdiction over an out of state defendant in an ERISA claim), unless exercising such jurisdiction would violate due process, *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002) (noting that "it is well-settled that 'a statute cannot grant personal jurisdiction where the Constitution forbids it'" (quoting *Gilson v. Republic of Ireland*, 682 F.2d 1022, 1028 (D.C. Cir. 1982))). Therefore, the court must determine whether its exercise of personal jurisdiction over the RDM defendants would violate due process.

"The Due Process Clause requires that if the defendant 'be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Although neither the Supreme Court nor this Circuit has addressed what minimum contacts are needed to satisfy due process when personal jurisdiction is asserted pursuant to a federal statute that authorizes nationwide service of process, other courts in this district as well as other circuit courts have employed a "national contacts test"

in such circumstances. *See, e.g.*, *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002) (ruling that "[w]here Congress has spoken by authorizing nationwide service of process . . . the jurisdiction of a federal court need not be confined by the defendants contacts with the state in which the federal court sit"); *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1035 (7th Cir. 2000) (holding that statutorily authorized nationwide service of process is proper so "long as defendants have adequate contacts with the United States as a whole"); *NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 525 n.5 (6th Cir. 2000) (noting that "the weight of Sixth Circuit precedent supports acceptance of the national contacts approach" in an ERISA case); *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1414 (9th Cir. 1989) (stating that where Congress specifically authorizes nationwide service of process, a federal district court's jurisdiction encompasses the boundaries of the United States and due process requires only that a defendant have minimum contacts with the United States); *Pikas v. Williams Cos.*, 542 F. Supp. 2d 782, 784 (S.D. Ohio 2008) (stating that "ERISA 502(e)(2) allows for personal jurisdiction over a defendant with minimum personal contacts with any of the fifty United States"); *Ohio Bldg.*, 260 F. Supp. 2d at 170-73 (D.D.C. 2003) (ruling that ERISA's nationwide service of process provision subjected a defendant to personal jurisdiction in the District of Columbia, despite the absence of minimum contacts, because the defendant had sufficient minimum contacts with the United States).[5]

Because the defendants are all companies registered to do business in Florida, the RDM defendants have the "national contacts" necessary to give rise to personal jurisdiction by virtue

---

[5] *But cf. AGS Int'l Serv., S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 86-86 (D.D.C. 2004) (concluding that the national contacts test did not apply in a Racketeer Influenced and Corrupt Organizations Act ("RICO") case because RICO's nationwide service provision provides for nationwide jurisdiction only where one of the defendants has minimum contacts with the local forum); *accord World Wide Minerals Ltd. v. Republic of Kazakhstahn*, 116 F. Supp. 2d 98, 108 (D.D.C. 2000).

7

of ERISA's nationwide service of process provision. *See e.g.*, *Ohio Bldg. Restoration, Inc.*, 260 F. Supp. 2d at 173 (concluding that "ERISA's nationwide service provision permits the [c]ourt to exercise jurisdiction over [a defendant company] because it is a citizen of the United States"). The RDM defendants do not take issue with the court's exercise of jurisdiction over properly served defendants in an ERISA action. *See generally* RDM Mot. Accordingly, the court's exercise of personal jurisdiction over the RDM defendants would not offend due process.

Nonetheless, the RDM defendants maintain that personal jurisdiction is not appropriately exercised here because they are not proper defendants, as they are neither bound signatories to any of the contested agreements nor alter egos of Bucher or each other. RDM Mot. at 5-7. Courts have reached differing conclusions as to whether some preliminary finding of potential liability is necessary before asserting personal jurisdiction pursuant to § 502(e) of ERISA.[6] The court need not now wade into the debate over whether some minimal showing of a viable claim is necessary prior to exercising personal jurisdiction because, as discussed below, the complaint

---

[6] *Compare Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1035 (7th Cir. 2000) (explaining that "[w]hether the defendant is liable under ERISA is the subject to be litigated following service; it is not a condition precedent to personal jurisdiction"); *Sheikh v. Mr. K's Restaurant, Inc.*, 2005 WL 1387591, at *2 (D.D.C. June 10, 2005) (stating that "[i]n a case where no discovery or evidentiary hearing has yet taken place, a plaintiff may defeat a motion to dismiss for lack of personal jurisdiction merely by making factual allegations sufficient to connect the defendant to the forum and establish a prima facie showing of jurisdiction" (citing *Nix v. Hoke*, 62 F. Supp. 2d 110, 113 (D.D.C. 1999))) ; *Flynn v. Ohio Bldg. Restoration, Inc.*, 260 F. Supp. 2d 156, 173 (D.D.C. 2003) (concurring with *Elite Erectors* and concluding that "[w]hether or not defendant Exact Construction will be found liable under plaintiff's 'alter ego' theory is a separate issue from whether there exists jurisdiction over it pursuant to ERISA's nationwide service provision" (citing *Elite Erectors*, 212 F.3d at 1033.); *with Verizon Employee Benefits Comm. v. Adams*, 2006 WL 66711, at *4 (N.D. Tex. Jan. 11, 2006) (holding that the plaintiff could not rely on ERISA's nationwide service provision to establish personal jurisdiction over a nonresident defendant because the plaintiff failed to state a claim upon which relief could be granted under ERISA); *Van Ru Credit Corp. v. Prof'l Brokerage Consultants, Inc.*, 2003 WL 22462607, at *2 (N.D. Ill. Oct. 29, 2003) (explaining that to establish personal jurisdiction pursuant to ERISA's nationwide service of process, "[a]llegations must meet the very low threshold of 'minimally viable' – which requires only that the allegations not be 'patently without merit' to support [personal] jurisdiction" (quoting *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F. Supp. 126 (N.D. Ill. 1989))).

8

adequately states a claim against the RDM defendants under Rule 12(b)(6). *See infra* Part B.2. Thus, because the RDM defendants were served pursuant to § 502(e) of ERISA and due process has been fulfilled, and because the plaintiffs have adequately stated their claims, the court concludes that it has personal jurisdiction over the RDM defendants.

## B. The Court Denies the RDM defendants' Motion to Dismiss for Failure to State a Claim

### 1. Legal Standard for Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-46, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of

facts in support of his claim [] would entitle him to relief"). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).

In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

### 2. The Plaintiffs Have Stated a Plausible Claim for Relief

The RDM defendants contend that the plaintiffs' complaint is both factually and legally insufficient and, therefore, should be dismissed pursuant to Rule 12(b)(6). RDM Defs.' Mot. at 10-13. First, they argue that the agreements prove that "only Bucher LLC is obligated to make payments to the Union." *Id*. at 11-12. As for the one agreement signed by "RD Masonry," the RDM defendants assert it was not their signature but rather that of "a company registered in a completely different state [that] has no relationship whatsoever with the parties to this lawsuit." *Id*. at 11. While the RDM defendants concede that RDMI was at one point bound to an

agreement included among the plaintiffs' exhibits, they claim that this agreement expired in April 2003 and, thus, does not support the plaintiffs' request for an audit of the company's records from January 2005 until December 2007.  *Id*. at 12.

The RDM defendants also maintain that the allegations in the complaint are insufficient to maintain a cause of action under alter ego liability because the plaintiffs failed to allege "some manifest injustice or fundamental unfairness" that would result if the companies are not deemed liable as alter egos.  *Id*. at 8.  Additionally, they propose the plaintiffs' complaint is deficient because it "only states that the [defendant] entities are jointly and severally liable for each other's *debts* . . . [and] does not allege that the entities are otherwise liable for each others' obligations."  *Id.* at 12.  Because no "debt" has been established, the RDM defendants conclude that the plaintiffs' claims against them should be dismissed.  *Id*. at 13.

The plaintiffs refute that they must plead "manifest injustice" or "fundamental unfairness" to adequately allege a claim alter ego liability, asserting that relevant case law does not support such a requirement.  Pls.' Opp'n at 13.  The plaintiffs point out that two of the agreements are signed by "RD Masonry," and that all of the agreements contain an "[e]vergreen [c]lause extending [the agreements'] terms on a yearly basis absent timely termination."  *Id.* at 9-10.  If further evidence reveals that the "RD Masonry" signature on the agreements is not that of the RDM defendants, the plaintiffs suggest, this should be resolved at the summary judgment stage and not on a motion to dismiss.  *Id*. at 11-12.  Lastly, the plaintiffs submit that the RDM defendants' attempt to distinguish between the defendants' "debts" and "obligations" is "frivolous," as they cite no authority supporting dismissal based on such a distinction.  *Id.* at 12.

In the ERISA context, alter ego liability enables benefit plan trustees to "recover delinquent contributions from a sham entity used to circumvent the participating employer's

11

pension obligations." *Flynn v. R.C. Tile*, 353 F.3d 953, 958 (D.C. Cir. 2004). Holding ERISA defendants liable as alter egos "prevent[s] employers from evading their obligations under labor laws and collective bargaining agreements through the device of making a mere technical change in the structure or identity of the employing entity . . . without making any substantial change in its ownership or management." *Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 307 (1st Cir. 1998) (internal citations and quotation marks omitted). The alter ego of a signatory to an ERISA-governed collective bargaining agreement is "obligated to honor the pension contribution terms of the [applicable agreement]." *R.C. Tile*, 353 F.3d at 958 (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Sloan*, 902 F.2d 593, 596 (7th Cir. 1990)); *see also Stardyne, Inc. v. Nat'l Labor Relations Bd.*, 41 F.3d 141, 145 (3d Cir. 1994) (stating that "if two entities are found to be alter egos, a collective bargaining agreement covering one entity is automatically deemed to cover the other" (citing *Howard Johnson Co. v. Detroit Local Joint Exec. Bd. Hotel & Rest. Employees*, 417 U.S. 249, 259 n.5 (1974))).

To determine whether two businesses are alter egos, the court "evaluates the similarities between the two enterprises in their ownership, management, business purpose, operations, equipment, and customers."[7] *R.C. Tile*, 353 F.3d at 958. In this analysis, "no single factor is controlling, and all need not be present to support a finding of alter ego status." *Belmont Concrete*, 139 F.3d at 308.

The plaintiffs allege that the defendants have "common ownership or management,

---

[7] This Circuit has stated "different considerations may be relevant where a corporation [as opposed to an unincorporated entity] is involved." *Flynn v. R.C. Tile*, 252 F.3d 953, 958 n.3 (D.C. Cir. 2004). The court agrees, however, with the determination by other courts in this district that the standards set forth in *R.C. Tile* apply to cases involving both corporations as well as unincorporated entities. *See Int'l Painters & Allied Trades Ind. Pension Fund v. M-K Signs*, 2010 WL 2093354, at *5 n.1 (D.D.C. May 25, 2010); *Flynn v. Interior Finishes, Inc.*, 425 F. Supp. 2d 38, 52 n.15 (D.D.C. 2006); *Flynn v. Ohio Bldg. Restoration, Inc.*, 317 F. Supp. 2d 22, 29-33 (D.D.C. 2004).

and/or the same or similar employees, customers, and type of work," and that the RDM defendants have identical street addresses. Compl. ¶ 11. Additionally, the plaintiffs proffer two agreements between the Union and "RD Masonry," both of which contain an "evergreen clause," to show that RDMI was a bound signatory to an ERISA-governed agreement during the contested time period.[8] *Id.* ¶ 12. The plaintiff's allegations together with the agreements signed by "RD Masonry" demonstrate that the plaintiffs have a plausible entitlement to relief under alter ego liability. Thus, contrary to the RDM defendants' assertion, the complaint and its exhibits do not contradict or undermine the plaintiffs' factual allegations in support of the RDM defendants' liability.

Nor is the complaint legally insufficient because it fails to plead "manifest injustice" or "fundamental unfairness." *See* RDM Defs.' Mot. at 8. "[A] favorable balance of the equities is not required to conclude that one entity is the alter ego of another for the purposes of [§] 515 [of ERISA]." *R.C. Tile*, 353 F.3d at 960. Indeed, courts in this jurisdiction have generally made determinations regarding alter ego liability without discussing the "injustice" or "unfairness" that would result if such liability were not imposed. *See, e.g.*, *id.* (conducting an alter ego analysis and imposing no requirement that the plaintiff plead or show inequity); *Int'l Painters & Allied Trades Ind. Pension Fund v. M-K Signs*, 2010 WL 2093354, at *7 n.1 (D.D.C. May 25, 2010) (same); *Bd. of Trs. v. N. Steel Corp.*, 657 F. Supp. 2d 155, 159-60 (D.D.C. 2009) (same); *Flynn v. Veazey Constr. Corp.*, 424 F. Supp. 2d 24, 33-35 (D.D.C. 2004) (same); *Ohio Bldg.*, 317 F. Supp. 2d at 34-36 (same). Instead, equitable arguments are more appropriately asserted during a

---

[8] Because all of the documents referred to in the plaintiffs' opposition were attached as exhibits to their complaint, the court need not evaluate the Rule 12(b)(6) motion to dismiss under a summary judgment standard. *See Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-625 (D.C. Cir. 1997) (holding that "[i]n determining whether a complaint fails to state a claim, we may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice").

later stage of the proceeding as a defense to liability under the alter ego doctrine.[9] *See R.C. Tile*, 353 F. 3d at 958-60 (analyzing the equitable arguments presented as a defense only *after* determining that the defendant was an alter ego for the purposes of ERISA § 515).

Finally, the court is not persuaded by the RDM defendants' effort to draw a distinction between a party's "debts" and its "obligations." The RDM defendants fail to cite any authority for their assertion that alter ego entities can be held jointly and severally liable only for their "obligations" and not their "debts." *See generally* RDM Defs.' Mot. Moreover, the complaint is clear in its request for relief: it requests that the court order the defendants to pay their allegedly delinquent contribution to the IPF and IMI and to participate in an audit of their records in order to determine the amount owed. Compl ¶¶ 5, 15. Whether in describing such relief, the plaintiff uses the word "obligation" or "debt" is of no moment.[10] Nor is it significant that the plaintiffs have not established the amount owed, as ERISA plaintiffs are routinely unable to provide the exact amount of unpaid contributions owed to them due to a lack access to the defendants' records. *Flynn. v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 162 (D.D.C. 2009) (accepting the plaintiffs' estimate of delinquent contributions in order to calculate damages).

Because the plaintiffs have pleaded sufficient factual allegations to support the inference that the RDM defendants are plausibly liable under ERISA for delinquent contributions, the court denies the RDM defendants' motion to dismiss under Rule 12(b)(6).

---

[9] Such was the case in *Flynn v. Interior Finishes, Inc.*, the sole authority cited by the RDM defendants in support of their argument that the plaintiffs' were required to plead some sort of inequity to assert alter ego liability. 425 F. Supp. 2d 38, 54 (D.D.C. 2006). The court in that case addressed the lack of inequity defense not in a Rule 12(b)(6) motion to dismiss, but rather during the parties' motions for summary judgment once discovery had taken place. *Id.*

[10] Indeed, the term "debt" may be used to describe "[t]he aggregate of all existing claims against a[n] . . . entity." BLACK'S LAW DICTIONARY 410 (7th ed. 1999).

## IV. CONCLUSION

For the foregoing reasons, the court denies the RDM defendants' motion to dismiss. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 7th day of September, 2010.